|  |  |  |
|---|---|---|
| **ASANTE**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-2512 (TSC) |
| | ) | |
| **ALEX M. AZAR, SECRETARY U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Asante, Asante Rogue Valley Medical Center, Asante Three Rivers Medical Center, Asante Ashland Community Hospital, Renown Regional Medical Center, Renown South Meadows Medical Center, Sky Lakes Medical Center, and Yuma Regional Medical Center (collectively, the "Hospitals"), eight hospitals located in Oregon, Nevada, and Arizona, bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, against the federal agencies and personnel responsible for administering Medicaid. The Hospitals seek a preliminary injunction to prevent Defendants from approving California's state plan amendment governing California's supplemental Medicaid payment program, and from providing federal matching funds under the program.

The Hospitals claim California's Medicaid plan improperly differentiates between in-state and out-of-state hospitals to make out-of-state hospitals, like them, ineligible to receive supplemental Medicaid payments. They argue this discriminatory scheme violates the Commerce Clause, Equal Protection, and the Medicaid Act, and that Defendants' approval and funding of the scheme violate the APA. Defendants have moved, pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Complaint. Upon consideration of the motions and the parties' briefs, and for the reasons set forth below, the court will GRANT Defendants' Motion to Dismiss (ECF No. 19) and therefore will DENY as moot Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2).

## I.     BACKGROUND

The Medicaid program, authorized under Title XIX of the Social Security Act, establishes a cooperative federal-state program that finances medical care for people who cannot afford medical services. *See* 42 U.S.C. §§ 1396–1396v. Defendants are the federal agencies and officials responsible for administering Medicaid: Department of Health and Human Services ("HHS"); Secretary of HHS, Alex Azar; Centers for Medicare and Medicaid Services ("CMS"); and CMS Administrator, Seema Verma. (ECF No. 1 ("Compl.") ¶ 10–13.) The HHS Secretary is responsible for the program and has delegated its administration to the CMS, an agency within HHS. *See* Centers for Medicare & Medicaid Services; Statement of Organization, Functions and Delegations of Authority; Reorganization Order, 66 Fed. Reg. 35,437 (2001). States participating in Medicaid must submit plans to CMS for approval that detail financial eligibility criteria, covered medical services, and reimbursement methods and standards. 42 U.S.C. §§ 1396a(a), 1396b. Once a state's plan is approved, the federal government provides financial assistance for necessary and proper costs of administering its Medicaid program. §§ 1396b, 1396d(b). States must also amend their plans to reflect changes in law or operation of its Medicaid program. CMS is responsible for reviewing all amendments to state plans to "determine whether the plan continues to meet the requirements for approval." 42 CFR § 430.12(c)(2).

California participates in the Medicaid program through Medi-Cal. *See* Cal. Welf. & Inst. Code § 14000, *et seq*. At issue here is the Medi-Cal method for paying certain hospitals supplemental Medicaid payments through their Quality Assurance Fee ("QAF") program. Under the program, California collects fees from certain hospitals, receives matching funds from the federal government, and disburses supplemental Medicaid payments to certain in-state hospitals from the total funds. (Compl. ¶¶ 48–51.) Under past iterations of California's QAF program, certain in-state hospitals received supplemental payments while out-of-state hospitals did not, (*Id.*), despite the fact that out-of-state hospitals, particularly those near the California border, provide frequent and necessary services to Medi-Cal patients. (Compl. ¶ 2–5.) The Hospitals allege that because of this differential treatment, the previous QAF programs, which ran through June 30, 2019, unlawfully discriminated against out-of-state hospitals. (*Id.* ¶ 67, 69.) The Hospitals further claim that the currently proposed QAF program, which covers a period starting on July 1, 2019, ("2019 QAF Program") will do the same. (*Id.* ¶ 69.) The Hospitals, however, only seek relief from the proposed QAF program, as they have already settled claims with California regarding the QAF program covering 2009 through June 30, 2019. (*Id.* ¶¶ 19–24, Prayer for Relief ¶¶ 1–4.)

To operate the QAF program—previous and proposed—CMS must approve California's state plan amendments, which it did for plan amendments for the QAF program through June 30, 2019. (*Id.* ¶¶ 94–95.) It also granted two tax waivers for California to collect the underlying fee to operate the QAF program. (*Id.* ¶¶ 89–92.) California now seeks approval for its state plan amendments for the 2019 QAF program, but CMS has not decided whether to grant such approval. (*Id.* ¶¶ 97–100.)

The Hospitals assert three claims against the Defendants under the APA. In Count One, they allege that "as it exists as of July 1, 2019, California's methodology for making QAF payments, as reflected in the California State Medicaid Plan, discriminates against interstate commerce and is unconstitutional under the Commerce Clause," and therefore CMS's approval violates APA § 706(2)(A), (B). (Compl. ¶¶ 105, 106.) In Count Two, the Hospitals claim that "as it exists as of July 1, 2019, California's differential treatment of in-state and out-of-state hospitals under the QAF program, as reflected in the California State Medicaid Plan, bears no rational relationship to any legitimate state purpose and thus violates the Equal Protection Clause of the Fourteenth Amendment," and therefore agency approval also violates the APA. (Compl. ¶¶ 110, 111.) Finally, in Count Three, the Hospitals allege that "California does not provide supplemental QAF monies to the plaintiffs 'to the same extent' that it provides funds to in-state hospitals" in violation of the Medicaid Act, and therefore agency approval again violates the APA.[1] (Compl. ¶¶ 115–117.) The Hospitals seek declaratory relief and an injunction "as of July 1, 2019" barring "all federal QAF payments," and preventing CMS from approving California's state plan amendments that include the allegedly discriminatory 2019 QAF program. (Prayer for Relief ¶¶ 1–4.) Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 18 ("Defs. Br.").)

---

[1] Count Four alleges a cause of action under the Declaratory Judgment Act. (Compl. ¶¶ 121 (citing 28 U.S.C. §§ 2201, 2202).) Declaratory relief, however, is not a freestanding cause of action, but rather a form of relief for the Hospitals' other claims. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). The court will therefore dismiss Count Four as a separate claim. *See Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015).

## II.     LEGAL STANDARD

Federal courts are of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). "Limits on subject-matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have prescribed,' and those limits 'must be policed by the courts on their own initiative.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999)). Such limits are especially important in the agency review context, where "Congress is free to choose the court in which judicial review of agency decisions may occur." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Watts*, 482 F.3d at 505). The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Thus, plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). But the court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept [plaintiffs'] legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United*

*States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). A motion to dismiss under 12(b)(1) "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). And "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing, *inter alia*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Conversely, a motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs' factual allegations need not be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Twombly*, 550 U.S. at 570).

---

[2] The Hospitals argue that Defendants' motion to dismiss is premature because the plausibility standard is not applicable when a plaintiff challenges agency action under the APA. (Pls. Br. at 1.) They rely on a decision from the First Circuit holding that "the plausibility standard has no place in APA review." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). Courts in this Circuit, however, regularly review motions to dismiss APA actions under the plausibility standard. *See, e.g.*, *L. Xia v. Tillerson*, 865 F.3d 643, 657 (D.C. Cir. 2017). This court will follow suit.

### III.  ANALYSIS

Defendants argue that the Hospitals' claims are not ripe for adjudication, no final agency action has occurred, the Hospitals lack standing, and the Hospitals have failed to state a claim under the Medicaid Act.  The court need only reach the first two arguments.

#### A.  **Final Agency Action**

Defendants contend that the Hospitals' claims are not ripe because CMS has not taken final agency action on California's 2019 QAF Program.  (Defs. Br. at 13–16.)  The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  Finality is a "threshold question" that determines whether judicial review is available under the APA.  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).  "An agency action is final only if it is *both* 'the consummation of the agency's decisionmaking process' and a decision by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'"  *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (emphasis in original).

The Hospitals concede that, because CMS has not approved or disapproved the 2019 QAF Program, there has been no final agency action on that program.  (ECF No. 22 ("Pls. Br.") at 7); *see also Douglas v. Indep. Living Ctr. of S. California, Inc.*, 565 U.S. 606, 613, 616 (2012) (noting that final agency action on a Medicaid state plan amendment occurs after CMS approves or disapproves the amendment).  Nevertheless, the Hospitals seek judicial review of the 2019 QAF Program under the theory that Defendants' previous approvals of California's previous state plan amendments to the QAF program are reviewable final agency actions.

But the Hospitals seek relief only from the 2019 QAF Program, on which Defendants have taken no action.  (Compl. ¶¶19–25.).  Indeed, in more than ten places in the Complaint, the

Hospitals state that the QAF program "as of July 1, 2019" is the program at issue. (Compl. ¶¶19–24, 105, 107, 108, 110, 112, 113, 118, 119, Prayer for Relief ¶¶ 1–4).) They also acknowledge they have already obtained relief from California from the allegedly discriminatory QAF program in place for the last ten years. (Compl. ¶¶ 19–24.)

The final agency action required for judicial review must be the action from which the Hospitals desire relief. *Cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990) (explaining that a complaint must challenge specific, final agency actions and that individual actions creating a "program" "cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members"); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (holding that without final agency action on an investigation plaintiff could not challenge the agency's jurisdiction to conduct the investigation). Therefore, the court cannot review previous approvals of the QAF program in lieu of reviewing final agency action on the 2019 QAF Program. The Hospitals seek no relief from any harm inflicted by previous approvals of the QAF program. Nor do they point to any policy, interim decision, or other action on the 2019 QAF Program that could plausibly be a final agency action for purposes of judicial review. In short, there is no final agency action for the court to review.

The Hospitals also argue that CMS's review for the 2019 QAF Program will be no different from previous reviews. (Pls. Br. at 7.) But the fact that CMS has approved California's QAF program in the past does not necessarily mean the agency will approve the 2019 QAF Program, especially where CMS has issued no interim decision. *Cf. Teva v. Sebelius*, 595 F.3d 1303, 1310 (D.C. Cir. 2010) (holding that the FDA's tentative approval of an application left "no suggestion" that "any possible deficiency or uncertainty . . . could thwart final approval.").

Judicial review is constrained where an agency has not taken final action because "[t]he interest in postponing review is powerful when the agency position is tentative. Judicial review at that stage improperly intrudes into the agency's decisionmaking process." *Reliable Automatic Sprinkler Co.*, 324 F.3d at 732 (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986)).

The Hospitals also argue—without citation to any relevant caselaw—that the 2019 QAF Program can be reviewed because it is ongoing without CMS approval. Whether California has implemented the 2019 QAF Program without federal agency approval has no bearing on whether CMS has taken final agency action on the program.

In sum, the Hospitals fail to state an APA claim because they do not challenge a final action by Defendants.

## B. Ripeness

Federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing ripeness, mootness, and the political question doctrine." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). The ripeness doctrine requires that a litigant's claims be "constitutionally and prudentially ripe," so as to protect (1) "the agency's interest in crystallizing its policy before that policy is subjected to judicial review," (2) "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," and (3) "the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Nevada v. U.S. Dep't of Energy*, 457 F.3d 78, 83–84 (D.C. Cir. 2006) (quoting *Eagle–Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915

(D.C. Cir. 1985)).  The court lacks subject-matter jurisdiction if a plaintiff's claims are not ripe.

*Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 208 (D.C. Cir. 2007) ("[R]ipeness goes to our

subject matter jurisdiction.").

      1.  <u>Constitutional Ripeness</u>

To show constitutional ripeness, "the plaintiff must establish constitutional minima akin

to that of standing by showing an injury-in-fact." *Oregonians for Floodplain Prot. v. U.S. Dep't*

*of Commerce*, 334 F. Supp. 3d 66, 73 (D.D.C. 2018) (citing *Nat'l Treasury Emps. Union*, 101

F.3d at 1427).  Ripeness "shares the constitutional requirement of standing that an injury in fact

be certainly impending." *Nat'l Treasury Emps. Union*, 101 F.3d at 1427.  Where a plaintiff

seeks prospective declaratory and injunctive relief, they "must establish an ongoing or future

injury that is 'certainly impending'" and cannot "rest on past injury." *Williams v. Lew*, 819 F.3d

466, 472 (D.C. Cir. 2016).

The Hospitals allege they suffer an ongoing injury from the significant financial losses

they are incurring and will incur from their ineligibility for California's 2019 QAF Program.

(Compl. ¶ 6.)  They aver that based on the QAF Program payments to other hospitals from July

1, 2018, through June 30, 2019, they annually lose approximately \$14 million in payments.  (*Id.*

¶ 75–76.)  Further, the Hospitals allege that the California agency responsible for Medi-Cal

implements the QAF Program before receiving federal approval, (*Id.* ¶ 101 (citing Cal. Welf. &

Inst. Code § 14169.63)), and is currently implementing the unapproved 2019 QAF Program

(ECF No. 22-1 ("Johnson Decl.") ¶ 5.)[3]  The court finds that, based on this ongoing economic

---

[3] The Hospitals' Johnson Declaration also incorporates by reference two declarations submitted
in a 2009 lawsuit by Medi-Cal administrators.  (Johnson Decl. ¶¶ 7–8.)  Those declarations state
that, ten years ago, California had a longstanding practice of implementing state plan
amendments before federal approval.  But those declarations were written four years before

injury from the 2019 QAF Program, the Hospitals have shown an injury in fact. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) (holding economic harm constitutes injury in fact).

Defendants argue that the Hospitals must show "significant" injury to establish "immediate and irreparable" injury. (Defs. Br. at 28–29). But Defendants' argument rests on an incorrect foundation; to establish injury-in-fact, the Hospitals need not establish irreparable injury, and the economic harm need not be significant. *Carpenters Indus. Council*, 854 F.3d at 5 ("Economic harm to a business clearly constitutes an injury-in-fact. And the amount is irrelevant. A dollar of economic harm is still an injury-in-fact for standing purposes."). The cases Defendants cite are not to the contrary; both cases discuss significant harm in examining whether plaintiffs showed irreparable injury to support a preliminary injunction, not whether plaintiffs showed injury in fact. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015); *Air Transp. Ass'n of Am., Inc.*, 840 F. Supp. 2d at 325.

Defendants also argue that the Hospitals have not suffered an injury in fact because there has been no agency action, and the Hospitals have not challenged the California statute that permits the 2019 QAF Program to be implemented before approval. (Defs. Br. at 13; ECF No. 24 ("Defs. Reply") at 6.) Essentially, Defendants argue that they did not cause the Hospitals' economic injury and cannot redress it. But the questions of who caused the Hospitals' injury and

---

enaction of a California statute permitting pre-approval implementation of its QAF Program (as opposed to state plan amendments generally). *See* Cal. Welf. & Inst. Code § 14169.63. Therefore, those declarations have no bearing on whether California is implementing the 2019 QAF Program before federal approval pursuant to Cal. Welf. & Inst. Code § 14169.63. Thus, the only basis for the Hospitals' factual allegation that the 2019 QAF Program is currently in effect is a single sentence in the Johnson Declaration. Nonetheless, despite this minimal showing, Defendants have not proffered any facts to the contrary.

who can remedy it go to the traceability and redressability elements of standing, not injury in fact. The court need not reach those issues in determining injury in fact for constitutional ripeness. *Nat'l Treasury Emps. Union*, 101 F.3d at n.1 (explaining that for constitutional ripeness, a plaintiff need only show an injury in fact that is "imminent" and not one that is "'concrete and particularized,' 'fairly traceable' to the challenged action, or 'likely to be redressed by a favorable decision'").[4]

2. Prudential Ripeness

While the Hospitals can show injury in fact, they fail to satisfy the prudential elements of ripeness, which requires that "courts consider 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 396 (D.C. Cir. 2013) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). In actions against agencies, that inquiry focuses on: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Nevada v. U.S. Dep't of Energy*, 457 F.3d at 84 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Defendants argue that without final agency action the issues are unfit for review. (Defs. Br. at 10.) The Hospitals respond that judicial intervention is unlikely to interfere with further

---

[4] The Hospitals also argue that the past ten years of the QAF Program—and Defendants' approvals over that time—show injury in fact. Because the court finds that the Hospitals have shown injury in fact from the ongoing harm from implementation of the 2019 QAF Program, the court need not reach the issue of whether their pleaded "past wrongs" establish a "real and immediate threat of injury." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

administrative action because CMS's review will be the same as the last ten years, and that facts do not need further development because the QAF program has been essentially the same for the last ten years, and CMS has approved the previous versions. (Pls. Br. at 6.)

Again, the Hospitals attempt to shoehorn ten years of actions into a suit explicitly based on the 2019 QAF Program, on which, as discussed above, CMS has not taken final agency action. And without final agency action, a dispute is generally unfit for review. *See, e.g.*, *Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944 n.4 (D.C. Cir. 2012) (noting that, at least in APA cases, a dispute is "not fit if it does not involve final agency action"). Not only has there been no final agency action, CMS has not issued even tentative approval of the 2019 QAF Program that would make the outcome of the pending review certain. *Cf. Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435–36 (D.C.Cir.1986) (finding that the agency action's degree of finality is the main consideration in evaluating its "fitness for judicial review" under the ripeness doctrine); *Teva*, 595 F.3d at 1310 (holding that the posture of the FDA's tentative approval of an application left "no suggestion" that "any possible deficiency or uncertainty . . . could thwart final approval"). Because there has been no final agency action, judicial review at this point would interfere with further administrative action on the 2019 QAF Program—that is, the agency's duty to approve or disapprove California's state plan amendments that include the 2019 QAF Program. This court will not intrude on that process, but rather afford "the agency . . . the opportunity to apply its expertise." *Pfizer, Inc. v. Shalala*, 182 F.3d 975, 978 (D.C. Cir. 1999). Moreover, the court would benefit from further factual development from the agency's review of and decision on the 2019 QAF Program.

Finally, any hardship imposed on the Hospitals does not outweigh the agency and court's interest in postponing review until CMS has taken final action. To outweigh the strong interest

in postponing review, a plaintiff's hardship must be "immediate, direct, and significant." *Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996); *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C. Cir. 1986). Ordinarily, financial loss is insufficient. *Abbott Labs.*, 387 U.S. at 153. The hardship must be such that without judicial review, a party would have to make significant changes in its everyday business practices—such as costly changes to comply with a regulation—or face the imposition of strong sanctions. *Beverly Enters., Inc. v. Herman*, 50 F. Supp. 2d 7, 13 (D.D.C. 1999) (citing *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171–172 (1967); *Abbott Labs.*, 387 U.S. at 154; *State Farm Mut. Auto. Ins. Co.*, 802 F.2d at 479.)

Defendants argue that the Hospitals will not suffer hardship because they have never received payments under the QAF program. (Defs. Br. at 11.) The Hospitals counter (without support from the record), that California is already disbursing funds under the 2019 QAF Program and once those funds have been distributed the Hospitals will be unable to recover their share. (Pls. Br. at 6.) But as the D.C. Circuit has explained, payment schemes that do not require a significant change in a party's business practice are not the type of hardship necessary to outweigh the interests in delayed review. In *Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011), plaintiffs challenged a tax refund scheme before they had applied for refunds. The Court explained that plaintiffs had not shown hardship: "Unlike a regulation that imposes obligations or prohibits conduct (backed by sanctions), a payment scheme like that established by the 2006 refund rules does not require 'an immediate and significant change' in plaintiffs' conduct." *Id.* at 743. The Hospitals have not alleged that they will be forced to make any immediate or significant changes in their business practices. Indeed, over the last ten years, they have never received payments under California's QAF program and instead have successfully settled claims with the state. (Compl. ¶¶ 19–24.) Thus, California's continued payments to other hospitals

under the 2019 QAF program do not cause the Hospitals the kind of hardship necessary to outweigh the interest in delayed review here.

In sum, the court finds that the Hospitals have established some, but not enough, hardship to outweigh the strong interest in delayed review here. Accordingly, the Hospitals' claims are not ripe, and this court lacks subject-matter jurisdiction.

## IV. CONCLUSION

For the reasons stated, Defendants' motion to dismiss will be GRANTED and therefore Plaintiffs' motion for preliminary injunction will be DENIED as moot. The complaint will be dismissed without prejudice. A corresponding Order will issue separately.

Date: January 16, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge